**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **CHRISTOPHER S. HARMS,** **AMBER M. HARMS,** **JOYCE E. HARMS,** **HARMS REAL ESTATE, LLC** **and** **WEBER REAL ESTATE, LLC** | **CIVIL ACTION NO. _____** **JURY TRIAL DEMANDED** |
| **Plaintiffs** | |
| **v.** | |
| **TPC GROUP, INC.,** | |
| **Defendant** | |

<u>**CLASS ACTION COMPLAINT AND JURY DEMAND**</u>

**TO THE HONORABLE COURT:**

Plaintiffs Christopher S. Harms, Amber M. Harms, Joyce E. Harms, Harms Real Estate, LLC, and Weber Real Estate, LLC (collectively, "Plaintiffs") complain of the actions of Defendant TPC Group, Inc. ("TPC"), and respectfully show the following.

<u>**NATURE OF THE CASE**</u>

This is a property damage, lost profits, loss of use, and medical monitoring class action. It also could involve personal injuries caused by toxic emissions.

Plaintiffs own houses in Port Neches, Texas close to a chemical plant owned and operated by TPC. Plaintiffs, for themselves and Class Members (as defined below) bring this action against TPC to secure compensation for the injury, harm, and damages they suffered due to the November 27, 2019 TPC chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, that extended far beyond its chemical plant premises, in the

form of, *inter alia*, damages to real and personal property, lost profits, loss of use damages, and out-of-pocket evacuation expenses. Plaintiffs and Class Members also request the Court to require TPC Group to establish a medical monitoring fund to monitor the effects of any toxic chemicals released during the explosions.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(a)(1) because the matter in controversy as to each named Plaintiff exceeds the sum of $75,000, exclusive of interest and costs, and the controversy is between citizens of different states (diversity jurisdiction).

2.      This Court also has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 (federal question jurisdiction).

3.      This Court also has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      This Court has *in personam* jurisdiction over TPC because at all relevant times, TPC, directly and/or through its agents and representatives resided, was found and conducted business in the Eastern District of Texas and continues to do so.

5.       At all relevant times, Defendant TPC, directly and/or through its agents and representatives, resided, was found and conducted business in the Eastern District of Texas and continues to do so. A substantial part, if not all, of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Texas. Accordingly, venue is proper in the Eastern District of Texas under 28 U.S.C § 1391(b)(1) and (b)(2).

## PARTIES

6.      Plaintiff Christopher S. Harms is a citizen and resident of Nederland, Texas, who owns houses in Port Neches, Texas that were directly and/or proximately damaged by two explosions and their concussive shock waves and aftermath at the TPC Port Neches chemical plant on November 27, 2019. Plaintiff Christopher S. Harms also suffered lost profits and loss of use damages as a direct and/or proximate result of the explosions and their concussive shock waves and aftermath.

7.      Plaintiff Amber M. Harms is a citizen and resident of Nederland, Texas, who owns houses in Port Neches, Texas that were directly and/or proximately damaged by two explosions and their concussive shock waves and aftermath at the TPC Port Neches chemical plant on November 27, 2019. Plaintiff Amber M. Harms also suffered lost profits and loss of use damages as a direct and/or proximate result of the explosions and their concussive shock waves and aftermath.

8.      Plaintiff Joyce E. Harms is a citizen and resident of Pickrell, Nebraska who owns houses in Port Neches, Texas that were directly and/or proximately damaged by two explosions and their concussive shock waves and aftermath at the TPC Port Neches chemical plant on November 27, 2019. Plaintiff Joyce E. Harms also suffered lost profits and loss of use damages as a direct and/or proximate result of the explosions and their concussive shock waves and aftermath.

9.      Plaintiff Harms Real Estate, LLC is a Texas limited liability company with its principal place of business in Nederland, Texas. Plaintiff Harms Real Estate, LLC owns houses in Port Neches, Texas that were directly and/or proximately damaged by two explosions and their concussive shock waves and aftermath at the TPC Port Neches chemical plant on

November 27, 2019. Plaintiff Harms Real Estate, LLC also suffered lost profits and loss of use damages as a direct and/or proximate result of the explosions and their concussive shock waves and aftermath.

10.    Plaintiff Weber Real Estate, LLC is a Texas limited liability company with its principal place of business in Port Arthur, Texas. Plaintiff Weber Real Estate, LLC owns houses in Port Neches, Texas that were directly and/or proximately damaged by two explosions and their concussive shock waves and aftermath at the TPC Port Neches chemical plant on November 27, 2019. Plaintiff Weber Real Estate, LLC also suffered lost profits and loss of use damages as a direct and/or proximate result of the explosions and their concussive shock waves and aftermath.

11.    Defendant TPC Group, Inc. ("TPC") is a Delaware corporation with its principal place of business in Houston, Texas. According to its website, www.tpcgrp.com, TPC Group is a leading producer of value-added products derived from petrochemical raw materials, such as C4 hydrocarbons, and a provider of critical infrastructure and logistics services along the Gulf Coast. TPC's products are sold into a wide range of performance, specialty and intermediate segments, including synthetic rubber, fuels, lubricant additives, plastics and surfactants. TPC owns and operates manufacturing facilities in the industrial corridor adjacent to the Houston Ship Channel and the chemical plant at 2102 Spur 136, Port Neches, Texas 77651 at issue in this case. TPC also owns and operates a product terminal in Lake Charles, Louisiana. TPC may be served with Summons and a copy of this Class Action Complaint and Jury Demand by serving its registered agent for service of process, CT Corporation Systems, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136.

## FACTS

**12.**      Plaintiffs own multiple houses in Port Neches, Texas close to the chemical plant owned and operated by TPC.

**13.**      TPC's Port Neches, Texas chemical plant produces highly flammable 1,3 butadiene, a precursor chemical used in synthetic rubber, and raffinate, a refining byproduct used to make other chemicals. The facility has about 175 full-time employees and 50 contractors, and spreads across 218 acres. Per TPC's website, the combined production capacity for the plant is more than 900 million pounds per year.

**14.**      But TPC's Port Neches, Texas chemical plant has a years-long history of state and federal environmental violations. It has been considered a high priority violator by the U.S. Environmental Protection Agency for more than two years, and been out of compliance with federal clean air laws since the agency's last inspection in August 2017. State data shows the facility has reported spewing more air pollution than allowed by its government-issued permits five times this year, including hundreds of pounds of butadiene.

**15.**      Together, the EPA and the Texas Commission on Environmental Quality, the state's environmental regulatory agency, have fined TPC for air emissions violations more than half a dozen times in the past five years after finding many of the missteps preventable. The last federal censure TPC faced was in 2017 when it was ordered under a consent decree to pay a civil penalty of $72,187, make various equipment upgrades, and spend no less than $275,000 on fence line monitoring for butadiene.

**16.**      But environmental and consumer advocacy groups have said that such penalties are nowhere near enough to deter a company that brings in billions of dollars a year from taking sufficient corrective actions.

17.     On November 27, 2019—the day before Thanksgiving—two explosions rocked TPC's Port Neches chemical plant within about 12 hours, sending deafening concussive shock waves far beyond the confines of its premises, releasing toxic chemicals into the air, injuring workers, and substantially damaging Plaintiffs' and Class Members' surrounding houses, businesses, and other structures.

18.     The blast was felt over thirty miles away. Toby Baker, executive director of the Texas Commission on Environmental Quality, said there was an "unacceptable trend of significant incidents" in the region.

19.     Plaintiffs and Class Members were first shaken from their beds around 1:00 a.m. Windows and doors of nearby houses, businesses, and other structures were shattered, crumpled, and blown open; some houses, businesses, and structures incurred substantial structural damage from the blast. Nearby residents and business owners were placed under a mandatory evacuation order, while others — as far away as Port Arthur, Texas — were ordered to shelter-in-place for hours.

20.     A second evacuation was ordered at approximately 3 p.m., about 1½ hours after a second explosion occurred at the TPC chemical plant. The second blast caused a tower to fall, emitting a boom heard across several Southeast Texas counties, and caused more damage to houses, businesses, and other structures.

21.     Though the exact cause of the fire and explosions, which injured several workers and residents, is still unknown, the Texas Tribune reported that local emergency response officials said it had been traced to a processing unit that produces butadiene, a colorless gas, which is used to make rubber and plastics and is a known human carcinogen. *See* https://www.

texastribune.org/2019/11/27/texas-plant-rocked-explosions-mandatory-evacuations-ordered/ (last visited Nov. 29, 2019).

22.     "When you look at all these facilities and their compliance histories, it's like a rap sheet," said Elena Craft, senior director for climate and health at the Environmental Defense Fund. "And, of course, we see many times these bad actors that continue to have violations and ultimately this can lead to the kind of major disasters like the explosion last night." *Id.*

23.     Late in the afternoon of November 27, local officials, fearing a new round of explosions and concussive shock waves, ordered a third mandatory evacuation of about 30,000 people in Jefferson County, Texas within four miles of the TPC chemical plant—thereby depriving them of the use of their property and businesses, including lost profits, the day before Thanksgiving, one of the busiest shopping days of the year.

24.     All told, over 50,000 people were required to evacuate the area within a four mile radius of the TPC Port Neches, Texas chemical plant—at great expense to them. Local officials said they were not sure when evacuated people would be able to return to their homes and businesses.

25.     Plaintiffs, on behalf of themselves and Class Members (as defined below) bring this action against TPC for, *inter alia*, (i) damages to their houses, businesses, other structures, and personal property inflicted by one or more explosions and their concussive shock waves and aftermath emanating from the TPC Port Neches chemical plant, including the loss of use of such property, (ii) lost profits from their businesses due to the resulting widespread mandatory evacuation orders, (iii) out-of-pocket evacuation expenses, and (iv) a medical monitoring program to monitor potential medical issues suffered by Plaintiffs and Class Members as a result of any chemicals released by the explosions and their concussive shock waves and aftermath.

## CLASS ACTION ALLEGATIONS

26.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this

action against TPC as a class action, for themselves and all members of the following class of

similarly situated individuals and entities (the "Class Members"):

> All individuals, businesses, and private and government entities that suffered damages directly and/or proximately caused by one or more explosions and their concussive shock waves and aftermath at the TPC Group, Inc. chemical plant in Port Neches, Texas, on November 27, 2019.

27.    Excluded from the proposed class are TPC, TPC's current employees, and the

Court and its personnel.

28.    The proposed class consists of several thousand geographically dispersed Class

Members, the joinder of whom in one action is impracticable. The precise number and identities

of the Class Members are readily ascertainable from the Jefferson County, Texas real property

records.

29.    By its wrongful actions, inaction, and/or omissions and the resulting chemical

plant explosions and their concussive shock waves and aftermath, including toxic emissions,

TPC violated the rights of Plaintiffs and each Class Member in the same way by failing to use

reasonable care and properly operating its Port Neches, Texas chemical plant that, in turn,

resulted in the two November 27, 2019 explosions inflicting injury, harm, and damages on

Plaintiffs and each Class Member and their property, businesses, and possibly their persons.

30.    Certain questions of law and fact common to the proposed Class predominate

over any questions affecting individual Class Members, including:

> (i)    whether TPC's wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, constitute negligence and/or gross negligence at Texas common law;

(ii)  whether TPC's wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, constitute negligence *per se* at Texas common law;

(iii)  whether TPC's wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, constitute nuisance at Texas common law;

(iv)  whether TPC's wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, directly or proximately caused Plaintiffs and Class Members to suffer actual and/or consequential injury, harm, and damages to their property, businesses, and possibly themselves;

(v)  whether Plaintiffs and Class Members are entitled to recover actual damages, consequential damages, compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, litigation expenses, and court costs and, if so, the amount of the recovery; and

(vi)  whether Plaintiffs and Class Members are entitled to declaratory relief, a temporary restraining order, a temporary injunction, and/or equitable relief, including the establishment of a medical monitoring fund for the testing, diagnosis and treatment of Plaintiffs' and Class Members' exposure to any toxic chemicals released in the explosions.

31.  Plaintiffs' claims are typical of Class Members' claims because Plaintiffs and Class Members are all victims of the above-described TPC Port Neches, Texas chemical plant explosions and their concussive shock waves and aftermath.

32.  Plaintiffs and their counsel will fairly and adequately represent the interests of Class Members. Plaintiffs have no interests antagonistic to, or in conflict with, the interests of any Class Members. Plaintiffs' counsel are experienced in leading and prosecuting large multi-district class actions, complex commercial litigation, and complex mass torts.

33.  A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiffs' and Class Members' claims. Plaintiffs and Class Members have been (and will continue to be) harmed as a direct and proximate result of TPC's above-described wrongful actions, inaction, and/or omissions and the resulting chemical plant explosions and their concussive shock waves and aftermath emanating from its Port Neches, Texas chemical

plant. Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and Parties, (ii) it would be virtually impossible for all Class Members to intervene as individual parties-plaintiff in this action, and (iii) it will provide court oversight of the claims process once TPC's liability is adjudicated.

34.     Certification, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above-described common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35.     Certification also is appropriate under FED. R. CIV. P. 23(b)(2) because TPC has acted (or refused to act) on grounds generally applicable to the Class, thereby making appropriate equitable relief with respect to the Class as a whole.

36.     Certification also is appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for TPC. For example, individual actions could be dispositive of the interests of the other Class Members who are not parties to such actions, and substantially impair or impede their ability to protect their interests.

37.     TPC's above-described wrongful actions, inaction, and/or omissions and the resulting chemical plant explosions and their concussive shock waves and aftermath emanating from its Port Neches, Texas chemical plant are applicable to the Class as a whole, for which Plaintiffs seek, *inter alia*, damages and other equitable remedies.

38.     Absent a class action, TPC will retain the benefits of its wrongdoing despite seriously violating the law and inflicting actual and consequential injury, harm, and damages on Plaintiffs and Class Members and their property and businesses.

## CLAIMS FOR RELIEF/ CAUSES OF ACTION

### COUNT I

### NEGLIGENCE/GROSS NEGLIGENCE

**39.** The preceding factual statements and allegations are incorporated by reference.

**40.** TPC had a duty to use reasonable care in operating its Port Neches, Texas chemical plant.

**41.** TPC also had a duty to use reasonable care in protecting Plaintiffs and Class Members whose houses, buildings, businesses, and other structures were in the appreciable zone of risk created by TPC's chemical plant operations that foreseeably would be exposed to, and suffer, injury and harm as a result of, such risks.

**42.** TPC also had a duty to use reasonable care to refrain from engaging in negligent and/or grossly negligent conduct that could cause explosions and toxic emissions that could directly and/or proximately result in injury, harm, damages, to nearby property owners and their businesses and property, such as Plaintiffs and Class Members.

**43.** TPC, however, failed to use reasonable care in operating its Port Neches, Texas chemical plant, thereby negligently, or in a grossly negligent manner, breaching its duty to nearby property owners and their businesses and property, including Plaintiffs and Class Members. TPC also failed to use reasonable care in protecting Plaintiffs and Class Members whose houses, buildings, businesses, other structures, and personal property were in the appreciable zone of risk created by TPC's chemical plant operations that foreseeably would be exposed to, and suffer, injury and harm as a result of such risks, thereby further negligently, or in a grossly negligent manner, breaching its duty to them. TPC also failed to use reasonable care to refrain from engaging in negligent and/or grossly negligent conduct that could cause explosions

that could directly and/or proximately result in injury, harm, damages, to nearby property owners and their businesses and property, including Plaintiffs and Class Members, thereby further negligently, or in a grossly negligent manner, breaching its duty to them.

44.    TPC specifically failed to use reasonable care and negligently, or in a grossly negligent manner, breached its duties to nearby Plaintiffs and Class Members by, *inter alia*, (i) failing to properly man, equip, and/or supervise its Port Neches, Texas chemical plant operations, (ii) failing to properly inspect, repair, and/or maintain its Port Neches, Texas chemical plant facilities, equipment, raw materials, and products, (iii) failing to properly isolate and store dangerous and combustible chemicals at its Port Neches, Texas chemical plant, and (iv) failing to promulgate, implement, and/or enforce policies, procedures, protocols, rules, and/or regulations and/or comply with state and federal governing law, rules, and regulations to ensure the safe operation of its Port Neches, Texas chemical plant that, in turn, could have (and would have) prevented the destructive explosions and their concussive shock waves and aftermath, including toxic emissions.

45.    TPC knew or should have known that its wrongful actions, inaction, and/or omissions in failing to carry out its above-described duties in operating its Port Neches, Texas chemical plant could (and would) result in injury, harm, and damages to nearby property owners and their businesses and property, including Plaintiffs and Class Members.

46.    It was also imminently foreseeable to TPC that if it failed to exercise reasonable care in operating its Port Neches, Texas chemical plant that Plaintiffs and Class Members would suffer injury, harm, and damages that they, in fact, have suffered (and will continue to suffer). There is no other foreseeable group of individuals and entities that would be directly and/or

proximately injured or harmed by TPC's above-described wrongful actions, inaction, and/or omissions other than Plaintiffs and Class Members.

47.     As a direct and proximate result of TPC's above-described wrongful actions, inaction, omissions, negligence, gross negligence, and the resulting chemical plant explosions and their concussive shock waves and aftermath, Plaintiffs and Class Members have suffered (and will continue to suffer) injury, harm, and damages to their property, businesses, and possibly themselves. TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath constitute negligence and/or gross negligence at Texas common law.

## COUNT II

## NEGLIGENCE *PER SE*

48.     The preceding factual statements and allegations are incorporated by reference.

49.     Federal agencies implement a number of programs,  rules, and regulations to prevent chemical facility accidents, reduce risks of terrorist attacks on chemical facilities, protect chemical facility workers, collect and share relevant information with the public and decision makers, and prepare first-responders to respond to large-scale accidents, such as the explosion at TPC's Port Neches, Texas chemical plant. The primary relevant Federal agencies and programs aimed at addressing chemical safety and security at chemical facilities include, *inter alia*:

(i)     Toxic Substances Control Act (as amended), 15 U.S.C. §§ 2601–2629, and its corresponding rules and regulations.

(ii)    Environmental Protection Agency ("EPA"). The EPA's Risk Management Program (RMP), established under the Clean Air Act, is aimed at reducing chemical risk at the local level.  EPA's rules require owners and operators of a facility that manufactures, uses, stores, or otherwise handles certain listed flammable and toxic substances to develop a risk management program that includes hazard assessment (including an evaluation of worst-case and alternative

accidental release scenarios), prevention mechanisms, and emergency response measures.

(iii)    EPA also implements the Emergency Planning and Community Right to Know Act (EPCRA), which was designed to promote emergency planning and preparedness at the state, local, and tribal levels. EPCRA helps ensure local communities and first responders have needed information on potential chemical hazards within their communities in order to develop community emergency response plans. Under EPCRA, facilities with Extremely Hazardous Chemicals must notify the State Emergency Response Commission or Tribal Emergency Response Committees (TERCs) and Local Emergency Planning Committee (LEPC), as well as participate in local emergency planning activities. LEPCs and TERCs are then responsible for developing a community emergency response plan.

(iv)    Department of Labor/Occupational Safety and Health Administration ("OSHA"). OSHA's Process Safety Management (PSM) standard sets requirements for the management of highly hazardous substances to prevent and mitigate the catastrophic releases of flammable, explosive, reactive, and toxic chemicals that may endanger workers. The PSM standard covers the manufacturing of explosives and processes involving threshold quantities of flammable liquids and flammable gasses, as well as 137 other highly hazardous chemicals.

(v)    In 2011, OSHA launched its Chemical Plant National Emphasis Program (NEP) to conduct focused inspections at randomly selected facilities among worksites likely to have highly hazardous chemicals in quantities covered by the PSM standard.

50.    On information and belief, TPC failed to comply with one or more of the above-referenced federal programs, rules, and regulations (and possibly others).

51.    Plaintiffs and Class Members are clearly within the class of persons the above-referenced federal programs, rules, and regulations are designed to protect. The injury, harm, and damages they, in fact, have suffered (and will continue to suffer) due to the TPC Port Neches, Texas chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, are precisely the types of injury, harm, and damages the above-referenced federal programs, rules, and regulations are designed to guard against and prevent.

52.    By its above-described wrongful actions, inaction, omissions, and their concussive shock waves and aftermath, including toxic emissions, TPC also failed to comply

with its internal TPC Group Business Conduct and Ethics Code ("BCE"). *See* https://tpcgroup-files.nyc3.digitaloceanspaces.com/Files/TPC-Group-Business-Conduct-and-Ethics-Code.pdf (last visited November 27, 2019). Pursuant to the BCE:

*Protection of the Environment*

Protecting people and the environment is key to the Company's commitment to its values. It is part of every decision and action by the Company.

Each employee and officer of the Company is responsible for ensuring that its products and operations meet applicable government and Company standards, whichever is more stringent. The Company's goal is to eliminate injuries, prevent adverse environmental impact, reduce wastes and emissions, and promote resource conservation at every stage of the life cycle of its products.

The Company expects all employees to be familiar with environmental, health and safety laws, and Company policies applicable to their area of business. The laws are complex, subject to frequent changes and vary from country to country. Seek advice from the Legal Department or the Environmental, Health, Safety, and Security (EHSS) group to clarify how these laws apply to your job.

*Workplace Health and Safety*

The Company's health and safety rules and procedures are designed to provide a safe and healthy work environment and meet or exceed applicable laws. Maintaining a safe and healthy work environment is heavily dependent on the choices and behavior of the Company's employees and other individuals.

Each employee must be aware of the rules and procedures that apply to his or her workplace, diligently follow the rules and encourage others to do the same. Immediately report any unsafe situations or acts to your supervisor, Human Resources, or the site EHSS leader.

*Id.* at 3.

     **53.**    Plaintiffs and Class Members also are clearly within the class of persons that TPC's BCE is designed to protect. The injury, harm, and damages they, in fact, have suffered (and will continue to suffer) due to the TPC Port Neches, Texas chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, are precisely the types of injury, harm, and damages the TPC BCE is designed to guard against and prevent.

54.      As a direct and proximate result of TPC's above-described wrongful actions, inaction, omissions, and violations of the above-referenced federal programs, rules, and regulations, and violations of its BCE, Plaintiffs and Class Members have suffered (and will continue to suffer) injury, harm, and damages to their houses, businesses, other structures, personal property, and possibly themselves. TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, constitute negligence *per se* at Texas common law.

## COUNT III

## TRESPASS

55.      The preceding factual statements and allegations are incorporated by reference.

56.      By its above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, TPC wrongfully entered Plaintiffs' and Class Members' property and businesses without Plaintiffs' and Class Members' consent or authorization, thereby directly and/or proximately causing Plaintiffs and Class Members to suffer injury, harm and damages to their property, businesses, and possibly themselves.

57.      TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, constitute trespass at Texas common law.

## COUNT IV

## NUISANCE

**58.**     The preceding factual statements and allegations are incorporated by reference.

**59.**     Under Texas law, a private nuisance is "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Crosstex North Texas Pipeline, L.P. n/k/a Enlink North Texas Pipeline LP v. Gardiner,* 505 S.W.3d 580 (Tex. 2016), *reh'g denied* (Dec. 16, 2016).

**60.**     Under Texas law, there also "must be some level of culpability on behalf of the defendant; nuisance cannot be premised on a mere accidental interference." *Id*. The following three general categories of conduct support liability for creating a private nuisance:

> **Intentional nuisance.** A defendant who acts with the desire to create an interference or with knowledge that the interference is substantially certain to result is liable for intentionally causing the interference even if the defendant does not agree that the interference is substantial or that the effects on the plaintiffs are unreasonable.

> **Negligent nuisance.** A negligent nuisance claim is governed by ordinary negligence principles, meaning a plaintiff only needs to prove duty, breach, and damages caused by that breach.

> **Strict liability nuisance.** A strict liability claim must be based on conduct that constitutes an "abnormally dangerous activity" or involves an "abnormally dangerous substance" that creates a "high degree of risk" of serious injury, but not an activity that is "abnormal and out of place in its surroundings."

*Id.*

**61.**     By its above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, that extended far beyond its chemical plant premises, TPC substantially interfered with Plaintiffs' and Class Members' use and enjoyment of their real property and businesses by

causing unreasonable discomfort or annoyance to their ordinary sensibilities when attempting to use and enjoy their real property and businesses the day before Thanksgiving—thereby directly and/or proximately causing Plaintiffs and Class Members to suffer injury, harm and damages to their real property, personal property, businesses, and possibly themselves. TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, collectively constitute an intentional, negligent, and/or strict liability private nuisance at Texas common law.

62.    On information and belief, TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, that extended far beyond its chemical plant premises, also interfered with the interests of the surrounding community, interfered with public health and safety, and directly and/or proximately damaged the general public in the form of toxic emissions released during the explosions. TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, that extended far beyond its chemical plant premises, collectively constitute a public nuisance at Texas common law.

## COUNT V

## MEDICAL MONITORING

63.    The preceding factual statements and allegations are incorporated by reference.

64.    As a direct and proximate result of TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and aftermath, including toxic emissions, that extended far beyond its chemical plant premises, Plaintiffs and Class Members may have suffered (and/or suffer in the future) severe and traumatic pain and/or other physical

and/or mental health issues caused by toxic emissions released during the chemical plant explosions.

65.    Plaintiffs and Class Members require specialized testing, diagnosis, treatment, and monitoring for these serious potential physical and mental health issues. The available monitoring regime is reasonably necessary according to contemporary scientific principles within the physical and mental health communities specializing in the diagnosis and treatment of physical and mental health issues caused by exposure to toxic chemical emissions.

66.    By monitoring and testing Plaintiffs and Class Members, any physical and/or mental health issues resulting from the TPC Port Neches, Texas chemical plant explosions may be diagnosed and treated, thereby significantly reducing the risk that Plaintiffs and Class Members will suffer long-term physical and/or mental health issues.

67.    Plaintiffs, for themselves and Class Members, therefore, seek the establishment of a Court-supervised medical monitoring program funded by TPC, which will facilitate the diagnosis and treatment of Plaintiffs' and Class Members' physical and/or mental health issues (if any) directly and/or proximately resulting from toxic emissions released during the TPC Port Neches, Texas chemical plant explosions. Such program should include a trust fund to pay for the monitoring and treatment of Plaintiffs and Class Members as frequently and appropriately as necessary. Plaintiffs and Class Members have no adequate remedy at law in that monetary damages alone cannot (and would not) compensate them for suffering from serious physical and/or mental health issues and economic losses due to the TPC chemical plant explosions. Without such Court-directed medical monitoring, Plaintiffs and Class Members may suffer serious physical and mental health issues that, in fact, could (and probably will) worsen.

## COUNT VI

## RESTITUTION

**68.**     The preceding factual statements and allegations are incorporated by reference.

**69.**     As a direct and proximate result of TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves, including toxic emissions, that extended far beyond its chemical plant premises, Plaintiffs and Class Members have suffered (and will continue to suffer) injury, harm, and damages to their property, business, and possibly themselves. As a matter of justice, equity, and good conscience, therefore, TPC should be compelled to make full restitution to Plaintiffs and Class Members in the form and in an amount to be determined by the trier of fact.

## COUNT VII

## DECLARATORY RELIEF

**70.**     The preceding factual statements and allegations are incorporated by reference.

**71.**     Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Court is authorized to enter a judgment declaring the Parties' rights and legal relations and grant further necessary relief based upon such a judgment.

**72.**     An actual controversy exists regarding TPC's duty to, *inter alia*, (i) use reasonable care in operating its Port Neches, Texas chemical plant, (ii) use reasonable care in protecting Plaintiffs and Class Members whose houses, buildings, businesses, and other structures were in the appreciable zone of risk created by TPC's chemical plant operations that foreseeably would be exposed to, and suffer, injury and harm as a result of, such risks, (iii) use reasonable care to refrain from engaging in negligent and/or grossly negligent conduct that could cause explosions and toxic emissions directly and/or proximately resulting in injury, harm,

damages, to nearby property owners and their businesses and property, such as Plaintiffs and Class Members, (iv) not trespass on Plaintiffs' and Class Members' property and businesses, (v) not create a private and/or public nuisance negatively impacting Plaintiffs' and Class Members' property and businesses, and/or (vi) interfering with the interests of the surrounding community and public health and safety.

73.     As a direct and proximate result of TPC's above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, that extended far beyond its chemical plant premises, Plaintiffs and Class Members have suffered (and will continue to suffer) injury, harm, and damages to their property, businesses, and possibly themselves, unless and until the Court enters judgment against TPC and awards Plaintiffs and Class Members their requested relief.

74.     Pursuant to the Court's authority under the Declaratory Judgment Act, Plaintiffs and Class Members request the Court to enter a judgment declaring, *inter alia*, that (i) TPC owed (and continues to owe) a legal duty to Plaintiffs and Class Members to (a) use reasonable care in operating its Port Neches, Texas chemical plant, (b) use reasonable care in protecting Plaintiffs and Class Members whose houses, buildings, businesses, structures, and personal property were in the appreciable zone of risk created by TPC's chemical plant operations that foreseeably would be exposed to, and suffer, injury, harm, and damages as a result of, such risks, (c) use reasonable care to refrain from engaging in negligent and/or grossly negligent conduct that could cause explosions and/or toxic emissions directly and/or proximately resulting in injury, harm, damages, to nearby property owners and their businesses and property, such as Plaintiffs and Class Members (d) safeguard and protect Plaintiffs and Class Members and their property and businesses from chemical plant explosions and their concussive shock waves and aftermath,

including toxic emissions, (e) publicly admit its wrongdoing, (f) personally apologize to Plaintiffs and Class Members, and (g) institute comprehensive policies, procedures, protocols, rules, and/or regulations and/or comply with state and/or federal governing law to ensure the safe operation of its Port Neches, Texas chemical plant; (ii) by its above-described wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, that extended far beyond its chemical plant premises, Plaintiffs and Class Members have suffered (and will continue to suffer) injury, harm, and damages to their property, businesses, and possibly themselves; (iii) TPC's breaches of such duties directly and proximately caused Plaintiffs, Class Members, and the general public to suffer (and continue to suffer) injury, harm, and damages to their property, businesses, and possibly themselves; (iv) Plaintiffs and Class Members are legally entitled to recover actual, consequential, and punitive damages and other equitable relief from TPC for such injury and harm; and (v) TPC's above-referenced wrongful actions, inaction, omissions, and the resulting chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, that extended far beyond its chemical plant premises, forming the basis of Plaintiffs' and Class Members' claims, causes of action, and request for declaratory relief actually occurred.

## COUNT VIII

### APPLICATION FOR TEMPORARY RESTRAINING ORDER
### AND TEMPORARY INJUNCTION

**75.**     The preceding factual statements and allegations are incorporated by reference.

**76.**     Due to the ongoing nature of the chemical plant explosions and their aftermath, Plaintiffs, for themselves and Class Members, and their expert witnesses and consultants, have not had an opportunity to inspect the TPC chemical plant premises. As part of their burden of proof in this action, Plaintiffs must show as nearly as possible the condition of the chemical plant

premises, equipment, tools, raw materials, and products resulting in the explosions and their concussive shock waves and aftermath, including toxic emissions, that directly and/or proximately caused Plaintiffs and Class Members to suffer injury, harm, and damages to their property, businesses, and possibly themselves.

77.     Without the opportunity to inspect the TPC Port Neches, Texas chemical plant premises, equipment, tools, raw materials, products, and operational documents and information resulting in and/or pertaining to the explosions and their concussive shock waves and aftermath, including toxic emissions, that directly and/or proximately caused Plaintiffs and Class Members to suffer injury, harm, and damages to their property, businesses, and possibly themselves, Plaintiffs and their experts and consultants will be deprived of critical information necessary to prosecute and prove Plaintiffs' and Class Members' claims and causes of action.

78.     Plaintiffs, for themselves and Class Members, therefore, request the Court to enter a temporary restraining order and thereafter, a temporary injunction, requiring TPC to maintain the status quo, preserve, and not destroy, delete, or otherwise alter, repair, replace, modify, or otherwise put back into service any aspect of its Port Neches, Texas chemical plant premises, equipment, tools, raw materials, products, and related operational documents and information, including, *inter alia*, relevant hard copy and electronic documents, information, and communications; signage; photographs; videos; manuals; policies; procedures; checklists; protocols; and monitoring and testing results until Plaintiffs and their experts and consultants have had an opportunity to thoroughly inspect same.

79.     Without such a temporary restraining order and temporary injunction, Plaintiffs have no adequate remedy at law and this action for damages and equitable relief would be severely and negatively impacted. Without such a temporary restraining order and temporary

injunction, Plaintiffs and Class Members would be irreparably harmed. The hardship to Plaintiffs

and Class Members if the temporary restraining order and temporary injunction do not issue

substantially exceeds the hardship to TPC if they are issued.

80.     Issuance of the requested temporary restraining order and temporary injunction

will not disserve the public interest. Rather, issuing them would be a major step in the right

direction towards compensating Plaintiffs and Class Members and healing the surrounding

community.

<u>**RELIEF REQUESTED**</u>

81.     The preceding factual statements and allegations are incorporated by reference.

82.     ACTUAL, CONSEQUENTIAL, AND COMPENSATORY DAMAGES AND/OR

RESTITUTION. As a direct and/or proximate result of TPC's above-described wrongful actions,

inaction, omissions, and the resulting chemical plant explosions and their concussive shock

waves and aftermath, including toxic emissions, that extended far beyond its chemical plant

premises, Plaintiffs and Class Members have suffered (and will continue to suffer) actual,

consequential, and compensatory injury, harm, and damages in the form of, *inter alia*, damages

to real and personal property, lost profits, loss of use damages, and out-of-pocket evacuation

expenses—for which they are entitled to compensation. Alternatively, Plaintiffs and Class

Members are entitled to equitable relief in the form of restitution. All injury, harm, and damages

suffered (and to be suffered) by Plaintiffs and Class Members were reasonably foreseeable by

TPC. All conditions precedent to Plaintiffs' and Class Members' claims for relief have been

performed or occurred.

83.     PUNITIVE DAMAGES. TPC's above-described wrongful actions, inaction,

omissions, and the resulting chemical plant explosions and their concussive shock waves and

24

aftermath, including toxic emissions, that extended far beyond its chemical plant premises, were committed willfully, wantonly, and with reckless disregard for Plaintiffs' and Class Members' rights and interests. Accordingly, Plaintiffs and Class Members also are entitled to punitive damages from TPC as punishment and to discourage such wrongful conduct in the future. All conditions precedent to Plaintiffs' and Class Members' claims for relief have been performed or occurred.

84.    **DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND EQUITABLE RELIEF.** Plaintiffs and Class Members also are entitled to the above-requested declaratory relief, temporary restraining order, temporary injunction, and equitable relief, including, without limitation, a medical monitoring fund for the testing, diagnosis, and treatment of any physical and/or mental health issues directly and/or proximately caused by the TPC Port Neches, Texas chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, that extended far beyond its chemical plant premises. All conditions precedent to Plaintiffs' and Class Members' claims for relief have been performed or occurred.

85.    **ATTORNEYS' FEES, LITIGATION EXPENSES AND COURT COSTS.** Plaintiffs and Class Members also are entitled to recover their attorneys' fees, litigation expenses, and court costs in prosecuting this action. All conditions precedent to Plaintiffs' and Class Members' claims for attorneys' fees, litigation expenses, and court costs have been performed or occurred.

**WHERFORE,** Plaintiffs, for themselves and Class Members, respectfully request that (i) Defendant TPC Group, Inc. be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiffs be designated the Class Representatives, and (iv) Plaintiffs' counsel be

appointed Class Counsel. Plaintiffs, for themselves and Class Members, also request that upon final

trial or hearing, judgment be awarded against Defendant TPC Group, Inc. in Plaintiffs' favor for:

(i)     actual, consequential, and compensatory damages (including, *inter alia*, damages to real and personal property, lost profits, loss of use damages, and out-of-pocket evacuation expenses) or, in the alternative, restitution, in an amount to be determined by the trier of fact;

(ii)    punitive damages;

(iii)   declaratory relief, a temporary restraining order, a temporary injunction, and equitable relief as set forth above, including, without limitation, a medical monitoring fund for the testing, diagnosis, and treatment of any physical and/or mental health issues directly and/or proximately caused by the TPC Port Neches, Texas chemical plant explosions and their concussive shock waves and aftermath, including toxic emissions, that extended far beyond its chemical plant premises;

(iv)    pre- and post-judgment interest at the highest legal rates;

(v)     attorneys' fees, litigation expenses, and court costs through the trial and any appeals of this case; and

(vi)    such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs, for themselves and all others similarly situated, respectfully demand a trial by jury

on all claims so triable.

Date: November 29, 2019

Respectfully submitted,

By: */s/ Richard L. Coffman*
Richard L. Coffman
**THE COFFMAN LAW FIRM**
Edison Plaza
350 Pine Street, Suite 700
Beaumont, TX 77701
Telephone: (409) 833-7700
Facsimile: (866) 835-8250
Email: rcoffman@coffmanlawfirm.com

Mitchell A. Toups
**MITCHELL A. TOUPS, LTD.**
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 838-6780
Email: matoups@wgttlaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE
PUTATIVE CLASS**